City of Sin, Jacinto v. Nat'l Union City of Sin, Jacinto v. Nat'l Union May it please the Court, Walter Schneider appearing on behalf of the City of Sin, Jacinto, the plaintiff in the underlying action and the appellant in this case. We're here as a result of two decisions by Judge Tymwin related to the pleadings in this case, a motion to dismiss and a motion for judgment on the pleadings. We've noted a number of issues in our papers. I'd like to focus on two principal ones which relate to Judge Tymwin's initial decision in May to grant the motion to dismiss on behalf of First State. The identical reasoning was in his final order dismissing the case against Nat'l Union as well. Principal issues that I see in the judge's reasoning are two. First and foremost is we are dealing with the city being liable for its contractors' negligence in 1990. Judge Tymwin noted in his ruling that the complaint alleged progressive property deterioration of a pipeline belonging to the Southern California Gas Company. That deterioration continued unabated through 1996 when it led to an explosion. We focused on the Schwab action. There were a number of actions that were consolidated in this case for property damage. The Chamber of Commerce building, there was a significant explosion there. Mr. Schwab suffered some severe personal injuries. And the issue that I see is that both Judge Tymwin and the insurance carriers treat these as two separate events. In other words, we have on the one hand the city's contractor negligently creating this ongoing property damage, and then we have the explosion and fires if they're two separate events. But just under traditional court analysis, the way we view it is our contractor, through negligent acts, sets in motion the whole process that culminates in the fire. Does it make a difference that the property damage was to the utility company's pipes? I don't believe so, Your Honor, because we've focused on the California Union insurance decision. Judge Tymwin rejected that. He embraced the Remmer decision. The California Union says that the insurance carrier that's on the risk when the property damage starts stays on the risk until all of the property damage, all of the resulting damage is complete. In this case, nobody even knew this was happening until the explosion, until all of the bodily injury and property damage claims were brought about by the fire. Until that time, as alleged in the pleadings, we have ongoing property damage. And again, we're dealing with a dismissal on the pleadings. And here, Judge Tymwin, in his order, he acknowledged that we were alleging continuous property damage, albeit to the gas company's property. But what happens is as a result of our damage to the gas company's property, we create an explosion of fire. And our view is that it's the proximate cause. It's the damage to the gas company's property that is the proximate cause of all of these other injuries. And in fact, as a result of the default proceedings against our contractor, that liability has been adjudicated, that the contractor's acts in 1990 are the proximate cause of the fire and all of the resulting damage in 1996. So in our view, I believe we cited the Aerojet decision that talks about once the policy is triggered, it answers for all of the damage, even if some of that damage occurs long after the damage commenced. Now, our situation would be very different, and I think Remmer would apply in the following scenario. Had our contractor negligently moved these pipes and put them in a position where when the local power station had a ground fault, sending massive amounts of current into the ground, if none of that had occurred during the policy period, then we would be dealing with Remmer, because what we would have is we would have created a potential nuisance by moving these pipes in close proximity, but nothing would have happened during the policy period. And in fact, if we had put these pipes in the ground the way they were put in, and five years later there was a ground fault and it caused this explosion, then I think Remmer and the Maples decision that the insurance carriers rely on and Judge Timlin accepted would be appropriate, because there you would have essentially a creation of a nuisance, but no property damage. And recall in Remmer, the underlying action, Morris versus Remmer, Mr. Remmer was accused of grading his lot in a way as to create a nuisance. But for, I believe it was five or six years, nothing happened. And it was only when the property collapsed and damaged the neighbor's house that the neighbor was able to maintain an action. And there they found that there was no continuous force or exposure to harm. Same with the Maples decision where they install a boiler, it works apparently for five or six years, and then it explodes. And in the California Union decision, they very carefully review Remmer and the other decisions, and they note that these cases are not dealing with an allegation or underlying facts of continuous injury to property. That's why this case is different, and that's why we believe that Judge Timlin simply committed error when he decided to apply Remmer as opposed to the California Union decision. I don't want to get you away from your question. Did you finish? Just to let you satisfy your answer, I interrupted. I had a follow-up. Okay, go ahead. Why don't you go ahead with the follow-up. Well, I guess the hurdle that I'm having with your argument is that your client purchased third-party liability policies. And so to trigger coverage under those policies, you have to show injury to a third party within the covered policy period, just by the straight language of the policies. And I think what Judge Timlin was saying is that that's what you fail, to show injury to a third party, even though the damage was occurring to the pipes and everything that ultimately led. But there was no injury to a third party, so the policy coverage terms would not have come into play. Two things on that point. First, the policies all include a one-occurrence provision, and that's discussed in California Union, where these policies acknowledge that if there is repeated exposure to the same hazardous condition, and here we're talking about high-voltage arc welding between two pipes, one of which contains an explosive gas. Now, that starts in 1990 as alleged in the pleadings, and it continues unabated to 1996 when there is an explosion. When you use the one-occurrence provision of the policy, you have to treat that as one event. Now, it certainly continues beyond the end of the policy term, and that was the same issue addressed in the California Union case. In that case, you had initial property damage manifesting itself when the hillside began to give away. It was repaired right at the end of the first carrier's policy term, but the underlying problem, the leaking pipes and the leaking pool, had not been fixed. And in that case, the court said, until that hazard, that peril that arises during your period on the risk is resolved, you're liable for all the damages that result. In terms of the question as to what property damage is sustained, I'm pretty sure that if we had called up Southern California Gas Company during this policy period and said, by the way, our contractor has foolishly moved these pipes, and your pipe is now being hit with a high-voltage arcing and is deteriorating the structural integrity of that pipe, and if it continues, it's essentially a time bomb, I don't think Southern California Gas would have waited for that eventuality. They would have gone in, they would have fixed it, and they would have sent us a bill. And, of course, we in turn would have said to our insurance carrier, this is the result of our contractor's negligence, but nobody knew. You know, Judge Wadlow's question was almost identical to the question I was going to ask you. The only way I was going to ask you differently was to ask you, we're dealing with a contract, and so we look at the contract for specific language. And I was going to ask you, what is a specific language you rely upon to prevail? The one occurrence language, Your Honor, and I don't have the exact provisions memorized. Don't we have to look, though, at a provision in the policy in order to decide whether you win or lose? You have to look at the policy, number one, to see that they define an occurrence that can include repeated exposure to the same hazardous condition, which is exactly the one. And we look at the specific language, and I wish you were prepared to tell us what language you want us to look at to show that you have coverage under the circumstances of this case, because I don't think anybody disputes the circumstances. Well, let me put it this way. I don't think we would be here if our contractor had simply gone out and in the process of building this new water main, they had severed the gas line and an immediate explosion had occurred. The question is, what happens when the severing of the gas line is the result of repeated exposure to a dangerous condition over a period of time? The policy itself says that you're going to treat that as one occurrence, because an occurrence can be repeated exposure. And it does not, by the way. We've cited in our brief, the policy doesn't say repeated exposure to the same hazardous condition, provided it all occurs within the policy period. It just says, and I think this is the proper way to interpret it, if during the policy period there is exposure to a hazardous condition that's created by the insurer to a third party's property, in this case the gas line, and it starts while the insurer is on the risk and it continues beyond the policy period until it's complete. And it's complete in this case when this gas line explodes and all these unfortunate injuries are the result. That's why I'm saying you have to treat that as one occurrence starting in the policy period, and if you compress that down, literally I think time-wise, you have to compress it down from the first time there's damage to the pipe to when it explodes. That's going to be treated as one occurrence under this policy, and there's no doubt that this was alleged in the underlying actions, and there was substantial evidence that it was the proximate cause of all of these injuries. The other issue is simply looking at California law and the continuous trigger theory, which also talks, leaving aside the language of the policy, starting with Montrose, we've cited numerous cases in this brief, that once the events are set in motion, it's almost like you're knocking down a row of dominoes and it keeps continuing, even though the repeated damage to property is not manifested. And this is what's critical here is, as we alleged in our underlying complaint, that pipe is being subjected to this force, and it was being damaged over a period of time, but once the damage commences, that policy answers for all resulting damage until it's complete. And in this case, yes, it didn't manifest itself until over five years later. When it did, it obviously did it in a very big way. And our view is that's the proximate cause, and this is precisely the type of liability that the city of San Jacinto was seeking coverage for when it insisted on being an additional named insured under the contractor's primary and excess carriers. Do you have the insurance policy at your place? Right here? Well, when you come for rebuttal, it would help me if you'd point to the provision that does it. You see, if you had some tires on your car, but you only drove the car three months a year, they might start the process of dry rot. Five years from now, they might have a blowout, but you'd have no coverage, I think, even though the process started five years prior. I think the difference here, Your Honor, is that we're talking, number one, about a pipe that's in the ground carrying a very dangerous substance. We're literally setting up a condition where it's almost like a welder's torch that's hitting this year after year. And again, there may be difficulties in terms of proof at trial. We're here at the pleading stage. This case was dismissed on the pleadings by an order that, remarkably enough, acknowledged that there was continuous property damage. Now, in our underlying complaint, we probably didn't connect the dots, if you will, in pointing out that Southern California Gas Company was necessarily suing us. It was obvious, however, they were going to be held accountable because it was their pipe, it was their gas that caused the explosion, that they would look to us. In our amended complaint, we attempted to bring that out to point out to the court that we were, in fact, being sued by a third party for property damage, and the insurance carriers take the position, well, okay, it was $11,000 to fix the pipe. But I think Southern California Gas Company had the right to look to us to make them whole for the damages that resulted from what we destroyed in terms of their property. That's why this whole continuous triggers is critical to the determination of this case, because once we set this in motion, it could have taken six months, it could have taken five years. But these decisions recognized that when the insured's negligence sets up a force that is continuing to be applied to property, that degrades that property and damages it, then the policy that's on the risk when it starts has to answer for it. The analysis that Judge Timlin went through basically said, well, there's continuous property damage, but he essentially ignored it and said because the plaintiffs that were damaged in the fire weren't suing over this deteriorating property that there could be no coverage. In fact, the plaintiffs were suing, in essence, over this deteriorating property damage, because that was the proximate cause of their injuries. I'm sorry, Your Honor. Well, that is a question you're touching on, the question, one of the questions that I had, that Judge Timlin says in his order that the city, however, has failed to show that SoCal Gas or any other complainant has prayed for damage to the gas line occurring while, he's talking here about National Union, but it's the same analysis, while that policy was in effect. So they didn't complain about that damage. I think it's fair to say that what the gas company was primarily focused on was this terrible explosion and its potential liability. But if you look at the underlying Schwab complaint, the Southern California Gas Company's cross-complaint, they all go back to what starts this. It's the negligence of our contractor in 1990, and they all allege that's the proximate cause for all of the harm here. I see I'm down to about four minutes. I need some context for this. Was the city insured at the time of the explosion? The city was part of a risk management pool with other public entities, so there was not a liability carrier per se that would answer for this. We don't have another insurer. It's essentially a self-insured risk, and the exposure here was in the millions of dollars. We also had the rather difficult aspect in this case that we're vicariously liable for the contractor, B & Sons, and the insurance carriers are refusing to defend B & Sons. In part, they say it's because it was a suspended corporation. But, in fact, as Judge Timlin's final order acknowledges, they were refusing to defend because they said there was no potential for coverage. So we're facing the plaintiffs vicariously liable for someone who isn't even defending themselves. And facing, you know, seven-figure recovery would be easy in a case like this and possibly even higher. So that was one of the reasons that we included the bad faith allegation, was that essentially to provide us a defense in this case when we're vicariously liable and we haven't done anything ourselves is no defense at all. And the insurance carriers had ample opportunities, rather, to settle the claims within policy limits. They never offered anything. They had no interest, and they've taken an absolute position that, regardless of the continuous deterioration to property, there's no potential for coverage for these third-party claims because it all occurred five years after the fact. Why don't you take the remaining time for rebuttal and check in the insurance policy for Judge Ferris? I'll try to address that question. Thank you. Thank you. Good morning, Your Honors. Wendy Albers for National Union. One thing I want to point out first is this is not a case involving the duty to defend. It's a case that involves the duty to indemnify. And the focus here has to be on when the damages for which coverage is being sought occurred, not on damages which could have been sought. And here, the only damages that have been asserted against the city for which the city is seeking indemnification  occurred after the expiration of National Union's policy. What I really see as the key to this case is that the damages relating to the explosion, whether they're asserted directly against the city by the underlying plaintiffs or asserted indirectly by the gas company for indemnification in the event the gas company is found liable to the underlying plaintiffs, are all damages that occurred after the policy expired, and such damages cannot be construed as a continuous loss, as the city argues, because those damages could not have been asserted prior to the time of this explosion. The only damages that could be construed as a continuous progressive loss is damage to the gas line itself, for which nobody has sought a claim of recovery against the city, based on the pleadings that were in front of the district court. And the continuous deterioration of the gas line does not turn damages resulting from the explosion into damages for a continuous loss, because those plaintiffs, the underlying plaintiffs and the gas company could not have brought a suit against the city until the time of the explosion. In all of the continuing progressive loss cases, such as Montrose, you've got a situation where you've got the underlying plaintiffs have been damaged from the onset of the wrongful act, and they continue, and perhaps they do not discover the damage until later, and there's a continuation of this damage. The plaintiffs here were only damaged in the explosion. They were not damaged by the result of the deterioration of the gas pipe. They could not have brought a cause of action against the city for the deterioration of the gas pipe. So you need to focus on what is the damage for which coverage is being sought, and when did that damage occur. The National Union's policy is very clear that it, the insuring agreement covers those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage, which occurs during the policy period. Those damages have to occur during the policy period for which the city is seeking indemnification. And here you do not have any damages for which the city is seeking indemnification for. The money is paid out to the underlying plaintiffs or a cross-claim from a gas company for indemnification in case the gas company is found liable to the underlying plaintiffs. They did not occur during the policy period. That is what makes this case more similar to the Remmer case and the Maples case. And unless the Court has any questions, the National Union will submit on its briefs. Thank you. Good morning, Your Honors. I'm Alan Sturgeon. I'm here today for First State Insurance Company, which is an excess carrier and also an appellee in this action. And as Judge Ferris inquired and mentioned, this is a contract action, not a tort action. What we are dealing with here is the terms of the contract of insurance and the indemnity claim of the city for damages that are asserted against the city resulting from the explosion. Now, the language in the First State policy defines bodily injury. It says, means bodily injury sustained by a person at any time during the policy period. Property damage is defined as meaning physical injury to tangible property occurring during the policy period. The policy period in this case was January 10, 1990 until January 10, 1991. The explosion and fire happened in an instant at some finite point in time on a October 2, 1996. Those are the damages that are an issue here, the damages that happened in the explosion and the fire. Judge Timlin correctly noted that some logic has to attach in lawsuits. We do not have a continuous progressive fire. We do not have a continuous progressive explosion. We do not have a continuous progressive burning of poor Mr. Schwab. None of that applies. Therefore, the whole idea of the continuous trigger or Montrose type of injury or damage simply does not exist in this case. And otherwise, all of the things that Ms. Albers said to you pertain to my client's position in this case as well. And I really have nothing further to add unless the Court has any questions. What are the distinctions between your policy language and national unions? There is one distinction that the city has attempted to seize upon. In Part B of the city's argument in the reply brief, they claim that First States' coverage grant is broader than national unions, but they ignore the definitions of bodily injury and property damage that I just read to the Court. The definition of an occurrence in the First State policy is as follows. Occurrence means, A, with respect to bodily injury or property damage, an accident, including continuous or repeated exposure to or property damage, neither expected nor intended from the standpoint of the insured. Now, the words bodily injury and the words property damage in that coverage grant are in all capitals. Those are defined words. So then we go back to the meaning of those defined words. And as I pointed out just a moment ago, bodily injury is bodily injury sustained during the policy period. Property damage is physical injury to tangible property during the policy period. And again, the policy period is January 10, 1990 to January 10, 1991. And the injuries and damages that we're talking about here occurred five years later, October 2, 1990. So to answer your question, Justice Fletcher, the only difference between the two policy languages that has any relevance here whatsoever is just that coverage grant that I just read to you. Thank you very much. Thank you. I might respond to that last point first concerning First State. Pardon me, I can't read with these. We have problems here. The portion the counsel was reading from includes a final paragraph that I think is telling all damages that arise from exposure to the same general conditions are considered to arise out of one occurrence. Now, if the same condition is the exposure of this pipe to the arc welding, and they define occurrence to include continuous or repeated exposure to substantially the same general harmful condition, and then they go on to say in that policy that all damages that arise out of this occurrence are covered by this policy, I think that is important for the Court's determination. Similarly, the National Union policy, and by the way, let me just, for the record, I apologize. The coverage grant appears at the excerpt of record at page 216. The language that I'm looking at appears at ER 223. For the National Union policy, the coverage grant is ER 174, talking about bodily injury. They also describe on page 182 of the record that occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. And you'll see in the California Union decision, they address this one occurrence policy language, which is essentially, if you're going to have repeated exposure that results in property damage, you're going to treat it as one event. There's no limitation on time. And I don't think you can go into the definitions of bodily injury and property damage and say that because they say that has to occur within the policy period that you then ignore the language that says you're going to treat this repeated exposure over any amount of time, because it's not limited, as one event. And if it's one event, it starts in their policy period. To the extent there's any ambiguity created by these provisions, I believe they necessarily are resolved against them. If you have any questions, I'm happy to answer them, but I'll submit on that basis. All right. Thank you, Counsel. City of San Jacinto v. National Union et al. will be submitted, and we will take a brief recess. Ten minutes before we take up the next matter. Thank you. Thank you.
judges: B. Fletcher, Farris, Wardlaw